# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Dale E. Holloway, Jr.

      v.

                                  Case No. 21-cv-865-PB
                                  Opinion No. 2022 DNH 097

Governor, State of
New Hampshire, et al.

## MEMORANDUM AND ORDER

Pro se plaintiff Dale E. Holloway, Jr. is currently serving a state sentence at the New Hampshire State Prison for assaulting a defense attorney who was representing him in a state prosecution for attempted murder. He filed this lawsuit in the District of Massachusetts against twenty-seven individuals whose alleged actions or inactions resulted in his assault conviction and his pending attempted murder charges. The case was transferred to this district and is now before me for preliminary review pursuant to 28 U.S.C. § 1915A, 28 U.S.C. § 1915(e)(2), and Local Rule 4.3(d)(1). I also consider Holloway's motions for injunctive and other relief.

## I.     BACKGROUND[1]

Holloway was charged with attempted murder, assault, and being a
felon in possession of a firearm following a shooting at a church service in
Pelham, New Hampshire. State v. Holloway, No. 226-2019-cr-814 (N.H.
Super. Ct., Hillsborough Cnty.-S.D.) ("Holloway I"). While those charges were
pending, Holloway was charged with assaulting his public defender, Michael
Davidow, during a meeting at the Hillsborough County Department of
Corrections (HCDOC). State v. Holloway, No. 216-2019-cr-1856 (N.H. Super.
Ct., Hillsborough Cnty.-N.D.) ("Holloway II"). He pleaded guilty to the
charges in Holloway II and is currently serving a sentence for that crime at
the New Hampshire State Prison. Holloway I remains pending.

The complaint alleges that on October 1, 2019, Brandon Castiglione
shot and killed Luis Garcia, Holloway's stepfather, who was a minister in a
church affiliated with the New England Pentecostal Ministries. Shortly
thereafter, Brandon Castiglione's father, Mark Castiglione, allegedly visited

---

[1]     In addition to the complaint (Doc. No. 1), Holloway filed three addenda
to the complaint (Doc. Nos. 14, 15, 15-1, and 16) and two affidavits (Doc. Nos.
27 and 31). The factual allegations in each document are construed as part of
the complaint for purposes of conducting this preliminary review.
       Holloway has also filed four habeas corpus petitions in separate cases
in this court. See Holloway v. N.H. State Prison Warden, 22-cv-22-SM
(D.N.H., filed Feb. 23, 2022); Holloway v. N.H. Dep't of Corrs., Comm'r, 22-cv-
09-SE (D.N.H., filed Feb. 23, 2022); Holloway v. United States, 21-cv-456-JD
(D.N.H., closed Oct. 13, 2021); and Holloway v. Hillsborough Cnty. Dep't of
Corrs., Superintendent, 21-cv-205-PB (D.N.H., closed Apr. 1, 2021). Some of
the background information is taken from the court's orders in those cases.

Holloway's mother to intimidate her. State investigators removed him from her home to prevent interference in the homicide case against Brandon. A superior court judge subsequently ordered Mark Castiglione not to have contact with members of Garcia's family.

Despite the no-contact order, defendant New England Pentecostal Ministries scheduled Garcia's funeral to take place immediately after Mark Castiglione's wedding in the same church on October 12. When Holloway arrived for the funeral, members of the Castiglione family allegedly attacked him. A shooting ensued, during which the pastor and the bride were wounded. Police arrested Holloway shortly after arriving at the scene.

When the state police interviewed Holloway following his arrest, he reported Mark Castiglione for being an accessory to Garcia's murder, harassing Garcia's family, and mounting a funeral protest. The state police, however, allegedly ignored those complaints because of Holloway's race (African American) and his criminal background (convicted felon). Holloway further alleges that the state police induced him to confess with false promises and later misrepresented what he said during the interview.

Holloway was ultimately charged with attempted murder in Holloway I and ordered detained without bail. Michael Davidow from the New Hampshire Public Defender's office was assigned to represent Holloway in the matter. Davidow, however, did not inform Holloway that his office was

also defending Brandon Castiglione in connection with Garcia's murder. On October 21, Davidow met with Holloway in a locked attorney visiting room at the HCDOC and allegedly harassed him. Holloway was accused of striking Davidow after Davidow got a nosebleed. Correctional officers responded by attacking Holloway and placing him in a restraining chair for two hours.

Holloway was subsequently charged with assaulting Davidow. At the arraignment in Holloway II, the superior court allegedly compelled Holloway to represent himself. While Holloway I was still pending, Holloway entered a guilty plea on the assault charge, which he now claims was involuntary. On May 27, 2021, the court imposed a seven-and-a-half to fifteen-year sentence in Holloway II. After sentencing, Holloway was transferred from the HCDOC to the New Hampshire State Prison.

Meanwhile, several attorneys have been appointed to defend Holloway in Holloway I, all of whom allegedly have conflicts of interests and rendered ineffective assistance. That case is currently scheduled for trial in May 2023.

Holloway filed the instant complaint in October 2021 against twenty-seven defendants, including Governor Sununu, a former state attorney general, an assistant attorney general, a state commissioner, a former superintendent of the HCDOC, county attorneys, chiefs of police, superior court judges, his former defense attorneys, New England Pentecostal Ministries, members of the Castiglione family, and a magistrate judge of this

court. He brings claims under 42 U.S.C. § 1983, generally alleging violations of his rights under the First, Fourth, Fifth, Sixth, Seventh, Eighth, Thirteenth, and Fourteenth Amendments. He also asserts multiple state tort claims.

The complaint principally challenges the pending state criminal proceedings in Holloway I and his conviction in Holloway II. In connection with Holloway I, the complaint alleges that Holloway was wrongfully charged with attempted murder, wrongfully held without bail, and is being maliciously prosecuted. With regards to Holloway II, the complaint asserts that Holloway's guilty plea was involuntary and that he was forced to represent himself at the arraignment. The remaining claims generally relate to the circumstances that led to the criminal charges in the two cases. Specifically, Holloway asserts that (1) various state officials failed to protect him from members of the Castiglione family prior to the church shooting; (2) the HCDOC failed to protect him from harassment by Davidow; (3) HCDOC officers used excessive force on Holloway during the Davidow incident; (4) the state police failed to investigate Holloway's criminal complaints stemming from Garcia's murder on account of his race or criminal background; and (5) his former defense attorneys rendered ineffective assistance of counsel.

The complaint seeks damages for each day of Holloway's confinement and additional damages for slander, defamation of character, personal injury,

and emotional distress. Holloway also requested that the court order the
creation of a commemorative mural for his stepfather. Through subsequent
filings, Holloway also seeks a variety of injunctive remedies, including his
release from state custody, dismissal of the indictment in <u>Holloway I</u>,
appointment of counsel and a psychiatric evaluation in <u>Holloway I</u>, a
restraining order against Mark Castiglione, and arrest warrants for various
persons.[2] He has also filed motions relating to transfer and venue.

## II.   <u>PRELIMINARY REVIEW STANDARD</u>

The court conducts a preliminary review of prisoner complaints filed in
forma pauperis. <u>See</u> LR 4.3(d)(1); <u>see also</u> 28 U.S.C. §§ 1915(e)(2), 1915A.
Claims may be dismissed, sua sponte, if the court lacks jurisdiction, a

---

[2]     Some of Holloway's motions for relief attempt to assert conditions of
confinement claims. <u>See</u> Doc. No. 11 (complaining about 23-hour lockdowns);
Doc. No. 19 (seeking release due to COVID-19); Doc. No. 27 (notice of his
filing of a state court complaint challenging lockdowns and inadequate access
to the law library). I do not consider those claims because they are not
sufficiently related to the original claims to be part of the same lawsuit. <u>See</u>
Fed. R. Civ. P. 20(a)(2) (defendants may be joined in one action only if the
claims in the action are asserted against them "jointly, severally, or in the
alternative with respect to or arising out of the same transaction, occurrence,
or series of transactions or occurrences," and the claims involve one or more
common questions of law or fact); <u>see also</u> George v. Smith, 507 F.3d 605, 607
(7th Cir. 2007) ("Unrelated claims against different defendants belong in
different suits, not only to prevent the sort of morass that [a multiclaim,
multidefendant] suit produce[s] but also to ensure that prisoners pay the
required filing fees—for the Prison Litigation Reform Act limits to 3 the
number of frivolous suits or appeals that any prisoner may file without
prepayment of the required fees.") (citing 28 U.S.C. § 1915(g)). If Holloway
wishes to assert those claims, he must do so in a separate action.

defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted. <u>See</u> 28 U.S.C. §§ 1915(e)(2), 1915A; LR 4.3(d)(1)(A). In considering whether the complaint states a claim, the court determines whether, stripped of legal conclusions, and with all reasonable inferences construed in plaintiff's favor, the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up).

### III.   <u>ANALYSIS</u>

Holloway seeks both injunctive relief and damages under § 1983.[3] I first discuss why his claims for injunctive relief must be dismissed based on the <u>Younger</u> abstention doctrine, the doctrine announced in Heck v. Humphrey, 512 U.S. 477 (1994), or the exclusivity of the traditional remedy of habeas corpus. I then address why his allegations in support of his claims for damages do not state a viable claim against any defendant. Lastly, I

---

[3]    The complaint also asserts violations of the Federal Detainee Treatment Act, 42 U.S.C. § 2000dd, the Speedy Trial Act, 18 U.S.C. § 3161, and the Bail Reform Act, 18 U.S.C. § 3142. Because those statutes do not apply to state prisoners or detainees in state custody facing state charges, his claims must be dismissed. <u>See</u> 42 U.S.C. § 2000dd(a) (restricting its provisions to individuals "in the custody or under the physical control of the United States Government"); United States v. Lewis, 732 F.3d 6, 11 (1st Cir. 2013) ("Pursuant to the clear statutory language, the [Speedy Trial] Act applies solely to individuals who have been arrested or served with a summons in connection with an alleged federal crime."); Woodcock v. Donnelly, 470 F.2d 93, 94 (1st Cir. 1972) (finding the Bail Reform Act "inapplicable to state prisoners seeking collateral relief").

explain my decision to decline supplemental jurisdiction over his state law claims.[4]

## A.    Claims for Injunctive Relief under § 1983

In his claims for injunctive relief, Holloway requests his release from state custody based on the invalidity of his conviction in <u>Holloway II</u>, release on bail or personal recognizance to the extent he would be held pursuant to a detainer in <u>Holloway I</u>, dismissal of the indictment in <u>Holloway I</u>, appointment of counsel and a psychiatric evaluation in <u>Holloway I</u>, a restraining order against Mark Castiglione, and arrest warrants for Castiglione and others. It is not within my power to grant any those requests.

---

[4]      As a preliminary matter, Holloway's motion to reconsider the transfer of this case and his motions for a change of venue are frivolous. <u>See</u> Docs. Nos. 23–25. Holloway provides no cognizable ground to reconsider the transfer, which was ordered by the District of Massachusetts. Further, venue is appropriate in this district because the defendants are residents of New Hampshire and all the underlying events occurred in the state. <u>See</u> 28 U.S.C. § 1391(b). And to the extent Holloway's motion to change venue is premised on his disagreement with my denial of his motion for recusal, he still has not provided a cognizable ground for recusal. Assuming he argues that recusal is appropriate because a colleague is a named defendant, I disagree. A fully informed, rational observer would not have reason to question my impartiality in this matter. <u>See</u> <u>Swan v. Barbadoro</u>, 520 F.3d 24, 26 (1st Cir. 2008) (explaining that "patently frivolous claims presented leave no room for any rational person to imagine that any bias could underlie" a decision).

1.   <u>Release from State Custody Based on Invalidity of Conviction</u>

Holloway is currently serving the state sentence imposed in <u>Holloway II</u>. To the extent his request for release from prison is based on the alleged invalidity of his conviction, that claim must be dismissed for two reasons.

First, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." <u>Preiser v. Rodriguez, 411 U.S. 475, 500 (1973)</u>. In other words, § 1983 cannot be used to circumvent the federal habeas statute where the injunctive relief challenges either the fact of a state prisoner's conviction or the length of his sentence. <u>Nelson v. Campbell, 541 U.S. 637, 643 (2004)</u>. To the extent Holloway seeks to invoke the habeas statute here, he must do so in a separate action.[5]

Second, the <u>Heck</u> doctrine deprives this court of jurisdiction to grant the requested relief. <u>See</u> <u>O'Brien v. Town of Bellingham, 943 F.3d 514, 529 (1st Cir. 2019)</u> ("Whether <u>Heck</u> bars § 1983 claims is a jurisdictional question that can be raised at any time during the pendency of the litigation."). Under <u>Heck</u>, a plaintiff convicted of a crime cannot obtain a judgment under § 1983 that "would necessarily imply the invalidity of his conviction or sentence"

---

[5]    Indeed, Holloway has already filed four habeas petitions in this court challenging his conviction mostly on grounds that overlap with his allegations here.

until the conviction or the sentence is set aside. 512 U.S. at 486–87. The doctrine applies regardless of whether a plaintiff seeks damages or injunctive relief. Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005). Because Holloway's conviction has not been set aside and ordering his release from state prison would directly undermine the validity of his conviction and sentence, Heck bars the relief that Holloway seeks.

2.    Injunctive Relief Targeting Ongoing State Criminal Proceedings

Holloway's challenges to the pending charges in Holloway I fare no better. Those claims must be dismissed based on Younger abstention.

Younger provides that federal courts should, in certain circumstances, abstain from entertaining cases involving issues that are the subject of currently pending state judicial proceedings. Younger v. Harris, 401 U.S. 37, 41 (1971). Subject to limited exceptions, the doctrine applies when: (1) there is an ongoing state proceeding which is judicial in nature; (2) important state interests are involved; and (3) the plaintiff will have an adequate opportunity in the state proceeding to raise the constitutional challenges presented in the federal lawsuit. Id. at 43–44. Where this test is satisfied, abstention is mandatory in all but extraordinary circumstances. See Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005).

In Younger, abstention was required because the plaintiff who was defending criminal charges in state court sought to enjoin the ongoing state

criminal proceedings. 401 U.S. at 53–54. Holloway's case is indistinguishable. As in Younger, the pending criminal proceeding against Holloway is unquestionably judicial in nature and implicates important state interests. Further, nothing in the complaint provides any basis for me to conclude that his federal claims cannot be fully litigated in the state courts. Lastly, the nonconclusory facts asserted in the complaint do not demonstrate that any exception to Younger abstention applies. Accordingly, injunctive relief that would intrude into the ongoing prosecution in Holloway I, such as Holloway's requests for dismissal of the indictment, release on bail,[6] appointment of counsel, and a psychiatric evaluation, must be dismissed under Younger.

For the same reasons, Younger bars Holloway's request for a restraining order against Mark Castiglione for his alleged intimidation of witnesses in the ongoing criminal case against Brandon Castiglione.

3.    Arrest Warrants

Holloway also asks me to issue warrants for the arrest of members of the Castiglione family and the assistant county attorneys prosecuting his case. Those requests must be denied because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973).

---

[6]    In addition, Holloway's requests for release on bail or on personal recognizance are moot because he is no longer in pretrial detention but serving a state sentence.

**B.     Claims for Damages under § 1983**

The defendants whom Holloway has sued for damages under § 1983 include (1) private persons, (2) heads of various state, county, and local entities, (3) state and federal judges, and (4) an assistant attorney general and several assistant county attorneys involved in his prosecution. I discuss his claims against each group of defendants in turn.

1.     Claims Against Private Persons

Holloway's claims against the New England Pentecostal Ministries, the Castiglione family, and his former defense attorneys fail to state claim for relief because § 1983 only allows for actions against state actors.

To state a claim under § 1983, Holloway must allege facts that show a state actor violated his rights secured by the Constitution or federal law. See Vega v. Tekoh, 142 S. Ct. 2095, 2101 (2022). The church is a private entity, and the Castigliones are private individuals with no alleged connection to the state. Because they are not state actors, the claims against them fail.

The same is true for Holloway's former defense attorneys. It is well settled that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981). The complaint alleges that these defendants rendered ineffective assistance while representing Holloway, thus making it clear that their actions or omissions

were performed in their role as counsel. Therefore, his claims against his appointed counsel are not viable.

2.    Claims Against Heads of State, County, and Local Entities

Holloway's claims against Governor Sununu, a former state attorney general, the state commissioner for the Department of Safety, a former superintendent of the HCDOC, the Hillsborough County attorney, and three chiefs of police likewise fail to state a claim upon which relief may be granted.

First, to the extent the complaint asserts claims for damages against the state officials in their official capacities, the Eleventh Amendment bars those claims. See Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015).

More fundamentally, the complaint fails to allege any facts to support a finding of liability against any of the defendants in this group. The complaint does not allege facts showing that any of these defendants directly participated in conduct that violated Holloway's constitutional rights. Rather, they held supervisory positions over unnamed individuals who allegedly caused the violations. At most, then, these defendants are being sued in their supervisory capacities.

In general, "a supervisor cannot be held liable under § 1983 on a respondeat superior theory." Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021). In other words, that a defendant held a position of authority over an

alleged wrongdoer is insufficient for § 1983 liability to attach. Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014). Instead, the liability of a supervisor must be based on his or her own actions or inactions that caused the violation, or on a showing that his or her conduct "led inexorably to" a subordinate's violation of a plaintiff's constitutional rights. Justiniano, 986 F.3d at 20 (cleaned up).

The complaint does not identify a single action or omission attributable to the supervisor defendants. There is no allegation that any of them directly participated in unconstitutional conduct. Nor are there any allegations that affirmatively link their conduct as supervisors to their subordinates' alleged violations. Thus, the claims for damages against the supervisor defendants must be dismissed in their entirety.

3.   Claims Against Judicial Officers

Holloway's claims against four superior court judges and a magistrate judge of this court must be dismissed on the ground of absolute judicial immunity. Absolute immunity protects judges "from civil liability for any normal and routine judicial act," except those taken in the "clear absence of all jurisdiction." Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989). "This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." Id. Because the alleged actions of the defendant judges were

undertaken within the scope of their judicial functions, including decisions on bail and appointment of counsel, they are immune from suit for damages.

      4.     <u>Claims Against State and County Prosecutors</u>

Lastly, Holloway asserts claims based on prosecutorial misconduct against an assistant attorney general and the assistant county attorneys who prosecuted the criminal charges against him. These claims must be dismissed because the defendants are entitled to absolute prosecutorial immunity.

Absolute prosecutorial immunity shields state actors from civil liability for engaging in "prosecutorial actions that are 'intimately associated with the judicial phase of the criminal process.'" Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). The complaint alleges that the prosecutors maliciously filed charges against Holloway and sought to unduly delay his trial by seeking extensions of court deadlines. Because those actions relate to the defendants' core duties as advocates, they are entitled to immunity from suit. See Kalina v. Fletcher, 522 U.S. 118, 130 (1997) (noting that absolute prosecutorial immunity would preclude § 1983 action against prosecutor for her conduct in preparing and filing charging document and presenting motions to the court).

## C.    **State Law Claims**

The complaint also asserts claims for slander, defamation, and malicious prosecution. My jurisdiction to consider those state law claims rests

on 28 U.S.C. § 1367, which gives a federal court supplemental jurisdiction to consider state law claims that are related to a federal claim. Because Holloway has not asserted a viable federal claim, however, I decline to exercise supplemental jurisdiction over his state law claims. See id. § 1367(c); González-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004).

## IV.   CONCLUSION

For the foregoing reasons, Holloway's motions for relief (Doc. Nos. 11, 12, 13, 19, 20, 21, 23, 24, 25, and 30) are denied, and the complaint (Doc. No. 1) is dismissed without prejudice. The clerk shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

September 26, 2022

cc:   Dale E. Holloway, Jr., pro se